AO 106 (Rev. 04/010) Application for Search Warrant     AUTHORIZED AND APPROVED/DATE:     D.H. Dilbeck 3/21/24

# UNITED STATES DISTRICT COURT
for the

WESTERN _____ DISTRICT OF _____ OKLAHOMA _____

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be search*<br>*Or identify the person by name and address)*<br>THE ENTIRE PROPERTY LOCATED AT<br>13120 NORTHWEST 1st TERRACE<br>YUKON, OKLAHOMA 73099 | )<br>)<br>)<br>)  Case No: M-24-244 -STE<br>)<br>) |

## APPLICATION FOR SEARCH WARRANT

I, a federal law enforcement officer or attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following Property *(identify the person or describe property to be searched and give its location)*:

See Attachment A

Located in the Western District of Oklahoma, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim.P.41(c) is (*check one or more*):
- ☒ evidence of the crime;
- ☒ contraband, fruits of crime, or other items illegally possessed;
- ☒ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 15 U.S.C. § 1124 | Importation of Goods Bearing Infringing Marks or Names Forbidden |
| 18 U.S.C. § 545 | Smuggling Goods into the United States |
| 18 U.S.C. § 2319 | Criminal Infringement of a Copyright |
| 17 U.S.C. § 506(a)(1)(A) | Criminal Infringement of a Copyright |
| 18 U.S.C. § 2320 | Trafficking in Counterfeit Goods |
| 19 U.S.C. § 1526 | Merchandise Bearing American Trademark |

The application is based on these facts:

See attached Affidavit of Special Agent Napoleon Harrington, HSI, which is incorporated by reference herein.

- ☒ Continued on the attached sheet(s).
- ☐ Delayed notice of [No. of Days] days *(give exact ending date if more than 30 days)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet(s).

*Applicant's signature*

NAPOLEON HARRINGTON
Special Agent
Homeland Security Investigations

Sworn to before me and signed in my presence.

Date: **Mar 22, 2024**

_Judge's signature_

**Lawton, OK**

City and State:

SHON T. ERWIN, U.S. Magistrate Judge
_Printed name and title_

2

## IN THE UNITED STATES DISTRICT COURT

## FOR THE WESTERN DISTRICT OF OKLAHOMA

### <u>AFFIDAVIT OF PROBABLE CAUSE FOR SEARCH WARRANT</u>

I, Napoleon Harrington, being duly sworn, do hereby depose and state as follows:

1. I am a criminal investigator or law enforcement officer of the United States, within the meaning of Section 2510(7) of Title 18, United States Code, and am empowered by law to conduct investigations of and to make arrests for offenses enumerated in Section 2516 of Title 18, United States Code.

2. I am a current Department of Homeland Security (DHS) Homeland Security Investigations (HSI) Special Agent. As part of my investigative experience as an HSI Special Agent, I investigate criminal violations relating to smuggling goods into the United States, and I have received training in Intellectual Property Rights (IPR) investigations. I am familiar with the manner in which counterfeit goods are marketed, manufactured, and imported into the United States. During my training and experience, I have become familiar with different methods employed by individuals and organizations who import and sell counterfeit products. My training has consisted of a baseline Criminal Investigation structure where the primary focus was on interviewing techniques, surveillance, evidence collection and recording, as well as document and merchandise fraud detection. I have received over 6 months of extensive training in Civil and Criminal Law and procedure. My career started with the United States Border Patrol Academy in Artesia, NM where I received significant training (6 months (117

training days) in the subjects of Law (with a focus on immigration), Law enforcement Spanish language, driving, subject control and defensive tactics, firearms, apprehension, and interviewing. I was stationed in Eagle Pass, TX as a Border Patrol Agent. Following my stint as a USBP Agent, I became a Federal Officer with US Customs and Border Protection (CBP). There I also received extensive training in fraud documentation detection (emphasis on passport and visa documentation), interviewing techniques, contraband detection, and procurement; as well as an emphasis in Fourth Amendment and Customs Law. I performed my duties at the John Fitzgerald Kennedy Airport where smugglers utilize the mail system to ship counterfeit goods and merchandise. I garnered valuable experience with the International Mail Facility with screening and opening said packages. Among those packages, I've intercepted articles of clothing, clothing accessories, commercial goods, and other copyright infringement violation merchandise that at times were referred to Investigations for potential prosecution.

## **DEFINITIONS**

3.  "Computer," as used herein, refers to "an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device" and includes smartphones, other mobile phones, and other mobile devices. *See* 18 U.S.C. § 1030(e)(1).

4. A "counterfeit mark" is one that is identical to or substantially indistinguishable from a registered trademark, the use of which is likely to confuse, cause mistake, or deceive the public in general. *See* 18 U.S.C. § 2320(f).

5. "Copyright" protection exists for original works of authorship fixed in any tangible medium of expression, now known, or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device. Works of authorship include, among other things: pictorial, graphical, and sculptural works. *See* 17 U.S.C. § 102.

## PROBABLE CAUSE

6. This Affidavit is submitted in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a search and seizure warrant to be executed at the place specifically described in Attachment A of this Affidavit:

> **The entire property located at 13120 Northwest 1st Terrace, Yukon, Oklahoma 73099, which is within the Western District of Oklahoma ("SUBJECT PREMISES").**

Based on the information set forth herein, I submit that there is probable cause to believe that evidence of violations of 15 U.S.C. § 1124 (Importation of Goods Bearing Infringing Marks or Names Forbidden), 18 U.S.C. § 545 (Smuggling Goods into the United States), 18 U.S.C. § 2319 and 17 U.S.C. § 506(a)(1)(A) (Criminal Infringement of a Copyright), 18 U.S.C. §2320 (Trafficking in Counterfeit Goods), and 19 U.S.C. § 1526 (Merchandise Bearing American Trademark) exists and will be found at the above-described location, as more fully described in Attachment A. This Affidavit is intended to show that there is sufficient probable cause for the described search warrant

and does not purport to set forth all my knowledge of, or investigation into, this matter. The facts and information contained in this Affidavit are based on my personal knowledge, my training and experience, and my discussion with various witnesses, including other law enforcement agents who are familiar with the investigation.

7.  A list of the specific items to be seized from the described location is attached hereto as Attachment B.  Based on my training and experience, as detailed above, there is probable cause to believe that the items listed in Attachment B will be found at the location more fully described in Attachment A.

## Details of Current Investigation

8.  On October 26, 2023, I was notified by Customs and Border Protection (CBP) Port Director Michael Pequano that Jovonia Leon MATHEY was importing counterfeit goods and selling them via social media. MATHEY has recently relocated to Oklahoma from Alabama. MATHEY has a shipping history of at least 170 incoming shipments ordered between her most recent two addresses. Record checks revealed that CBP had previously seized two prior shipments on January 22, 2023, and May 16, 2023.

9.  On October 27, 2023, I was notified by CBP Port Director Pequano that several shipments had been intercepted for Intellectual Property Rights (IPR) violations. The recipient of all the shipments was Jovonia MATHEY, and the shipments were sent to 13120 NW 1st Terrace, Yukon, OK 73099. Record checks showed that MATHEY had been receiving shipments at the residence in Yukon, OK as well as her previous residence in Hazel Green, AL. There had been over 170 shipments sent to MATHEY that were believed to be counterfeit merchandise from luxury goods such as Coach,

Louis Vuitton, Gucci, Christian Dior, Prada, and Rolex. CBP created seizure records for multiple intercepted shipments, and the MSRP of goods seized in just seven of those shipments totaled nearly $400,000. The merchandise was intercepted, assessed, and appraised by CBP import specialists.

10. On October 27, 2023, I conducted residential system record checks that showed the subjects, Jovonia MATHEY and husband Chad MATHEY are residing at 13120 NW 1st Terrace in Yukon, OK 73099 as their primary residence.

11. On Thursday, November 2, 2023, I contacted Investigative Services Company, which specializes in intellectual property rights violations, and discussed a controlled buy from Jovonia MATHEY's Facebook online marketplace page, of potential trademark infringement merchandise to assess whether the products were indeed counterfeit goods. The Investigative Services Company places an order, purchases the product(s), and does an affidavit/report when receipt of the order is secured.

12. Multiple federal officers and agents from CBP along with HSI have witnessed Jovonia MATHEY selling multiple items through Facebook online marketplace. CBP Port Director Pequano made a request for all CBP entities to target, intercept, and seize any incoming shipments with Jovonia MATHEY's name and/or address.

13. On Friday, November 3, 2023, I was notified by CBP Port Director Pequano that a request for a hold was placed on shipments to Jovonia MATHEY, 13120 NW 1st Terrace Yukon, OK 73099. The subject is suspected of engaging in commercial fraud by selling counterfeit merchandise. The total MSRP of the counterfeit merchandise that has been seized is now above $1.6 million USD.

14. CBP Port Director Pequano has stated that the seized merchandise is poor quality and not reflective of the quality of the multimillion-dollar brand standards, that the merchandise is not being ordered directly from the manufacturer (website, store, etc.) and is shipped comingled with other designer brand goods, and that the countries of origin are predominantly China, the Philippines, and Thailand that are making and shipping the goods.

15. MATHEY has received at least 10 Customs and Border and Protection Intellectual Property Rights seizure notification letters regarding the receipt of counterfeit goods and has not adhered to any of the notices. The subject has continued to order additional merchandise and sell the products online even altering normal shipping patterns and using an alias to receive goods.

16. On November 21, 2023, I was contacted by the Investigative Services Company regarding their agreed controlled buy of one Louis Vuitton trademarked thermos. The thermos was being advertised on Jovonia MATHEY's Facebook Live webpage where she advertised and auctioned merchandise. The Louis Vuitton thermos was purchased for $40. The Investigative Services Company purchased the thermos for $50 with shipping cost included via CashApp and the merchant was identified as Chad MATHEY, Jovonia's husband. The item was delivered on November 9, 2023, via United States Postal Service. The return address was listed as Von Sue 12444 NW 19th Street, Suite 163, Yukon, Oklahoma 73099, which is not an existing address. As set forth below, I submit there is probable cause to believe that Jovonia MATHEY, using

the SUBJECT PREMISES, has been purchasing and selling counterfeit products in violation of the above referenced statutes.

## CHARACTERISTICS COMMON TO INDIVIDUALS TRAFFICKING IN COUNTERFEIT GOODS AND COPYRIGHT INFRINGEMENT

17. Based on my previous investigative experience related to counterfeit goods investigations, and the training and experience of other experienced investigators with whom I have had discussions, I know that the terms "trademark" and "copyright" are not necessarily interchangeable, but often overlap when dealing in counterfeit goods. In other words, the use of a counterfeit mark upon an item infringes on the copyright for that legitimate item. I know there are certain characteristics common to individuals who traffic in counterfeit merchandise and infringe upon copyrights.

18. Counterfeit merchandise dealers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, cashier check receipts, and other papers relating to the transportation, ordering, sale, and distribution of counterfeit merchandise, even though such documents may be in code. That counterfeit merchandise dealers commonly operate their business as a legitimate business and often maintain records so they can account for their expenditures and profits made from the sales. The aforementioned books, records, receipts, notes, ledgers, etc., are commonly maintained where counterfeit merchandise dealers have ready access to them, i.e., homes, offices, businesses, automobiles, storage places.

19. It is common for counterfeit merchandise dealers to conceal contraband items, proceeds of counterfeit merchandise sales and/or records of sales transactions, counterfeit

merchandise manufacturers, sources and proceeds from the sale of counterfeit merchandise, in secure locations within the residences, businesses, offices, garages, storage buildings, safes, vaults, safe deposit boxes, vehicles and obscure locations such as storage containers buried underground, in order to conceal such items from law enforcement authorities.

20. Counterfeit merchandise dealers commonly maintain addresses or telephone numbers in books or papers which reflect names, addresses, and/or telephone numbers for their associates and customers in the counterfeit merchandise organization, even if said items may be in code and that these types of records are sometimes maintained in computers or other electronic data storage devices.

21. Counterfeit merchandise dealers frequently take, or cause to be taken, photographs and/or videos of themselves, their associates, their property, and their products, and that these traffickers usually maintain these photographs and/or videos in their residences, offices, or other places under their control.

22. Counterfeit merchandise dealers often keep paraphernalia for packaging and distributing counterfeit merchandise, and that such items often include plastic wrap, plastic bags, mail parcels, shipping labels, envelopes, and other packaging materials.

23. When counterfeit merchandise dealers collect proceeds from the sale of the merchandise, they often attempt to legitimize these profits. Further, that to accomplish this goal, counterfeit merchandise dealers use sources, including but not limited to, foreign and domestic banks and their attendant services, cashier's checks, money orders,

wire transfers, bank drafts and internet banking sites such as Venmo, CashApp, Zelle, and PayPal.

24. Counterfeit merchandise dealers commonly utilize telephones, both residential and cellular means of communications to conduct their trafficking "business", and that these cellular telephones stay with their users during the transportation of counterfeit merchandise. These cellular telephones are used on a consistent basis to make contact between the driver, the origin, sender, and recipients of the counterfeit merchandise.

25. Counterfeit merchandise dealers often purchase expensive vehicles, businesses, and residences with the proceeds from their sales transactions, and that they often keep these items registered in the names of other trusted individuals to avoid discovery by law enforcement. Organizations that specialize in the smuggling and/or transportation of counterfeit merchandise often utilize the United States Postal service, United Parcel Service, DHL, FedEx, and other commercial carriers to conduct their interstate shipment of counterfeit merchandise across the United States.

26. As a criminal investigator, I have found that counterfeit merchandise trafficking is a continuing activity over months and years. Counterfeit merchandise traffickers will repeatedly obtain or manufacture counterfeit merchandise, then distribute their products on a regular basis, much like a legitimate business. Similarly, such counterfeit merchandise dealers will have an "inventory" which will fluctuate in size depending upon the demand for the product. Further, traffickers keep records of their illegal activities for a period extending beyond the time during which they possessed the counterfeit merchandise, in order to maintain contact with their criminal associates for

future transactions.  Further, counterfeit merchandise dealers keep records of prior transactions to keep track of money owed and received from their customers.

## SPECIFICS OF SEARCH AND SEIZURE OF COMPUTER SYSTEMS

27. As described above and in Attachment B, this Application seeks permission to search for records, in whatever form they are found.  One form in which the records might be found is data stored on a computer's hard drive or other storage media, such as a cellular phone, smartphone, or tablet.  Thus, the warrants applied for would authorize the seizure of electronic storage media or, potentially, the copying of electronically stored information, all under Rule 41(e)(2)(B).

28. Based on my knowledge, training, and experience, I know that electronic devices can store information for long periods of time.  I also know that individuals involved in ordering counterfeit goods from foreign locations, like China or the Philippines, often use a variety of electronic devise to accomplish these tasks, including personal computers and smart phones.  Individuals use these devices to contact counterfeit merchandise dealers, arrange shipments with the dealers, and advertise or sell the counterfeit items, and therefore evidence of their criminal activity is not only facilitated by, but also stored on the devices.  Similarly, things that have been viewed via the Internet are typically stored for some period of time on the device.  This information can sometimes be recovered with forensics tools.

29. I submit that if a computer or storage medium is found at the location described in Attachment A, there is probable cause to believe those records referenced above will be stored on that computer or storage medium, for at least the following reasons:

a.  Data on the storage medium can provide evidence of a file that was once on the storage medium but has since been deleted or edited, or of a deleted portion of a file (such as a paragraph that has been deleted from a word processing file).

b.  Forensic evidence on a device can also indicate who has used or controlled the device.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence.

c.  A person with appropriate familiarity with how an electronic device works may, after examining this forensic evidence in its proper context, be able to draw conclusions about how electronic devices were used, the purpose of their use, who used them, and when.

d.  The process of identifying the exact electronically stored information on a storage medium that is necessary to draw an accurate conclusion is a dynamic process.  Electronic evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on a computer is evidence may depend on other information stored on the computer and the application of knowledge about how a computer behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrant.

e.  I know that when an individual uses an electronic device to traffic counterfeit merchandise, traffic trademarked merchandise, and smuggle goods in violation of 15 U.S.C. § 1124, 17 U.S.C. § 506(a)(1)(a), 18 U.S.C.

§§ 545, 2319, 2320, and 19 U.S. Code § 1526, the individual's device will generally serve both as an instrumentality for committing the crime, and also as a storage medium for evidence of the crime. The electronic device is an instrumentality of the crime because it is used as a means of committing the criminal offense. The electronic device is also likely to be a storage medium for evidence of crime. From my training and experience, I believe that an electronic device used to commit a crime of this type may contain data that is evidence of how the electronic device was used; data that was sent or received; and other records that indicate the nature of the offense.

    f.  Further, in finding evidence of how a device was used, the purpose of its use, who used it, and when, sometimes it is necessary to establish that a particular thing is not present on a storage medium.

30. Based on the foregoing, and consistent with Rule 41(e)(2)(B), the warrant I am applying for would permit the examination of the device consistent with the warrant. The examination may require authorities to employ techniques, including but not limited to computer-assisted scans of the entire medium, that might expose many parts of the device to human inspection to determine whether it is evidence described by the warrant.

31. In my training and experience, I also know that in situations where an individual is using their primary residence to engage in criminal activity as with the **SUBJECT PREMISES**, there is the possibility that computer devices and cell phones may be

present which are highly unlikely to contain evidence sought by this warrant (e.g. computers or cell phones which are clearly used by minor children). As set forth in Attachment B, the warrant I am applying for requests authorization for search and seizure of only those electronic devices which appear to be found in a location or under circumstances indicating they are not used exclusively for family use or use by children who may reside at the **SUBJECT PREMISES** and therefore is limited to computers or electronic devices which are likely to contain the evidence sought by this application.

### PRESENCE OF REPRESENTATIVES IN CONJUNCTION WITH SEARCH

32. In addition, to the extent this search identifies goods which appear to be manufactured by Coach, Louis Vuitton, Gucci, Chanel, Christian Dior, Prada, Rolex, Adidas, Burberry Clothing, and Nike, determining which items are counterfeit or genuine may require the examination and expertise of a representative of these manufacturers. The execution of this search warrant anticipates that a representative will be present at the search site and will be available to review and consult with law enforcement personnel in connection with the examination of apparent Adidas, Puma, Nike merchandise to aid in the determination of whether such items are counterfeit or not. This may include this representative's limited entry onto the **SUBJECT PREMISES** as reasonably necessary to render such review and consultation. Accordingly, I seek authorization from the Court to include such a representative in the search team to ensure that only those items which are the subject of legitimate seizure are seized during the execution of the warrant.

## CONCLUSION

33. Based on the foregoing, I believe that there is probable cause that evidence of violations of 15 U.S.C. § 1124, 17 U.S.C. § 506(a)(1)(a), 18 U.S.C. §§ 545, 2319, 2320, and 19 U.S. Code § 1526 exists and will be found at the location described in **Attachment A**.


_____
Napoleon Harrington
Special Agent
Homeland Security Investigations


Subscribed and sworn via telephone on this 22nd day of March 2024.


_____
SHON T. ERWIN
U.S. Magistrate Judge

## ATTACHMENT A

### DESCRIPTION OF LOCATIONS TO BE SEARCHED

The entire property located at 13120 Northwest 1st Terrace, Yukon, Oklahoma 73099, located within the Western District of Oklahoma (the **SUBJECT PREMISES**). The premises to be searched consists of a single-story brown and tan colored brick residential dwelling with a three-car garage located on the south side of the street facing north, any outbuildings, vehicles, and any appurtenances thereto. The scope of this search also includes the persons of **Jovonia MATHEY** and **Chad MATHEY** for any of the items described in Attachment B. The premises to be searched is described above and pictured on the following page:





## ATTACHMENT B

## ITEMS TO BE SEIZED

The following materials, which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use, or which is or has been used as the means of committing a criminal offense, namely violations of 15 U.S.C. § 1124, 17 U.S.C. § 506(a)(1)(a), 18 U.S.C. §§ 545, 2319, 2320, and 19 U.S.C. § 1526:

1) Computers or storage media, including cellular telephones, hard drives, diskettes, CD-ROMS, and other storage devices that contain electronically stored information (other than those whose location or other indicia of ownership or use reflect that they are used exclusively by or for minor child purposes).

2) For any computer or storage media whose seizure is otherwise authorized by this warrant, and any computer or storage media that contains or in which are stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

    a) evidence of who used, owned, or controlled the COMPUTER at the time the things described in this warrant were created, edited, or deleted, such as logs, registry entries, configuration files, saved usernames and passwords, documents, browsing history, user profiles, email, email contacts, "chat," instant messaging logs, photographs, and correspondence;

b) evidence indicating how and when the computer was accessed or used to determine the chronological context of computer access, use, and events relating to the crimes under investigation and to the computer user;

c) evidence indicating the computer user's knowledge and/or intent as it relates to the crimes under investigation;

d) evidence of the attachment to the COMPUTER of other storage devices or similar containers for electronic evidence;

e) evidence of programs (and associated data) that are designed to eliminate data from the COMPUTER;

f) evidence of the times the COMPUTER was used;

g) passwords, encryption keys, and other access devices that may be necessary to access the COMPUTER;

h) documentation and manuals that may be necessary to access the COMPUTER or to conduct a forensic examination of the COMPUTER;

i) records of or information about Internet Protocol addresses used by the COMPUTER;

j) records of or information about the COMPUTER's Internet activity, including firewall logs, caches, browser history and cookies, "bookmarked" or "favorite" web pages, search terms that the user entered into any Internet search engine, and records of user-typed web addresses; and

k) contextual information necessary to understand the evidence described in this attachment.

3) Counterfeit electronics, electronics, merchandise bearing a counterfeit trademark;

4) Parcel invoices, delivery boxes, packaging, labels;

5) United States or foreign Currency;

6) Records, information, and items relating to violations of the statutes described above, including papers, correspondences and documents relating to tally sheets, contact sheets, mailing lists of individuals who are distributed counterfeit items, leasing, banking, and checking information, ledger, tax records;

7) All financial records relating to disposition or the proceeds of counterfeit merchandise, evidence of wire transfers, legitimate money orders, cashier's checks, safety deposit box records and keys, Post Office Box records reflecting ownership and/or occupancy of the premises searched;

8) Records, information, and items relating to the occupancy or ownership of the **SUBJECT PREMISES**, including utility and telephone bills, mail envelopes, addressed correspondence, rental agreements and records, leases, mail, vehicle registrations, telephone (including cellular), receipts, personal identification, and photographs.